THACKSTON v. PORT ROYAL &c. RAILWAY COMPANY.

1. APPEAL—FACTS.—This court cannot review an order of the Circuit Judge overruling a motion for new trial on the facts.

2. EXCEPTIONS should suggest specific errors. An extended quotation from the judge's charge, followed by an argument to show the error therein, is an objectionable form of exception.

3. BURDEN OF PROOF—CHARGE.—The charge in this case, construed as a whole, clearly declared that it was incumbent on plaintiff to establish his complaint by a preponderance of evidence.

4. CHARGING JURIES.—Error in refusing a request to charge cannot be imputed to the trial judge, where the matter requested was charged in better form.

5. AN EXCEPTION imputing error to the judge, "in charging, in substance,

that the defendant must show of what disease the intestate died," is too general for consideration, and in this case was unfounded.

6. CHARGING JURIES.—After charging the law of the case, the trial judge did not withdraw this law from the consideration of the jury by adding, that the case must turn in a great measure upon a question of fact.

7. IBID.—CONTRIBUTORY NEGLIGENCE.—The trial judge did not withhold the question of contributory negligence in this case from the jury by saying that the main question in the case was as to the cause of intestate's death, he having properly instructed them as to their duty under the defence of contributory negligence.

Before IZLAR, J., Spartanburg, October, 1892.

Action by T. B. Thackston, as administrator of W. N. Boon, plaintiff, against the Port Royal and Western Carolina Railway Company. The judge charged the jury:

The issues which you are to consider and decide are clearly defined by the pleadings. You are to determine from the testimony whether there has been any negligence in the case on the part of the plaintiff or the defendant. You are made the sole judges of the facts. I am not allowed to invade your province, by intimating even an opinion as to the facts, and I shall endeavor not to do so. The law, however, you are to take from the court. I will say here in the outset, that the burden of the proof is on the plaintiff. He must satisfy you by the preponderance of the evidence on all the material issues involved, before he can ask a verdict at your hands, and if he fails to do so, he cannot recover. My duty, therefore, is to explain to you what negligence is, and then leave you to say whether or not the facts which may be found by you, from the evidence, constitute negligence in the light of the law; in other words, whether the facts proven constitute negligence.

Now, what is negligence? Negligence is sometimes defined to be the absence of due care—that is, the absence of that care which men ordinarily bestow in the management of their own business and affairs. It is the failure to do what a reasonable and prudent person would ordinarily have done under the circumstances of the situation; or the doing what such person—that is, a reasonable and prudent person—would not have done under the circumstances of the situation. The existence of

6—40

negligence depends upon the requirements of the occasion. To recover damages for an injury done by the defendant company in a case like the present, the plaintiff must prove to your satisfaction, by the preponderance of the evidence, two things: 1. Negligence on the part of the defendant company; and 2. That the injury complained of was the result of such negligence. The negligence complained of must be shown to have been the proximate cause of the injury. By proximate cause, I mean the first direct cause producing the injury. An act is said to be the proximate cause of an event when in the natural order of things, and under the existing circumstances, it would necessarily produce the result or event.

Contributory negligence is such an act or omission on the part of the plaintiff as amounts to want of ordinary care, which, concurring or co-operating with the negligent act of the defendant, is the proximate cause or occasion of the injury complained of. To constitute contributory negligence, there must, as I have already said, be a want of ordinary care on the part of the plaintiff, and a proximate connection between the want of ordinary care on the part of the plaintiff and the injury sustained. Where contributory negligence is the issue, there are two questions to be determined: first, was there an exercise of ordinary care under the circumstances? and, secondly, was there a proximate connection between the act or omission complained of and the injury? If the testimony satisfies you that the deceased did not, under the circumstances of the situation, exercise ordinary care, and that this want of ordinary care on his part was the direct and proximate cause of the injury complained of, then a case of contributory negligence would be made out, and the plaintiff could not recover. For the rule, as I understand it, in a case like the present, is, that if the negligence of the plaintiff's intestate contributed in any degree to the cause or occasion of the injury, there can be no recovery. It would be different, however, if the negligence of the plaintiff's intestate was the remote cause of the injury. In such case there would be no contributory negligence, and he might recover. And here I may say that it is wholly immaterial when the negligence of the plaintiff's intestate ope-

rated to produce the injury, if his negligence was the proximate cause of the injury complained of. When this is the case, there is no cause of action, and there can be no recovery.

I have frequently used the term "ordinary care," and it may be necessary that I should explain to you what is meant by the term "ordinary care." Now "ordinary care" is that measure of prudence and carefulness which the average prudent man might be expected to exercise under the circumstances of the situation. The failure to exercise ordinary care amounts in law to ordinary negligence. And in this connection I would say, that even should the testimony satisfy you that there was negligence on the part of the defendant, if the deceased, by the exercise of ordinary care, could have avoided the injury, and failed to do so, he would be regarded, in law, as the author of his own injury, and could not recover.

While, as I have said, negligence is the want of due care, gross negligence has been defined to be the want of even slight care and diligence. It is a greater want of care than is to be understood by the term "ordinary care." The negligence charged against the defendant is gross negligence and carelessness. You are to determine from the evidence if there was a want of that care and diligence on the part of the defendant on the occasion of the collision, which was requisite under the circumstances of the situation. If you should find there was, and that this negligence was the proximate cause of the injury, then the plaintiff would be entitled to recover.

Now, it is the duty of the court to instruct you what, in law, constitutes a fellow-servant, and what constitutes a representative of the master. Whether or not the person in question is one or the other, is a question of fact to be solved by you. Fellow-servants are those who are in the same common employment, serving the same master or employer, and under the control of the master or employer. If the person is employed to do any of the duties of the master or employer, he is in law a representative of the master or employer, and not a fellow-servant. A conductor in charge of a train has been held in this State to be a representative of the company. Now, if there was in this case negligence on the part of the conductor who

was in charge of the train which collided with the train operated by W. N. Boon, and that negligence was the direct and proximate cause of the injury from which W. N. Boon died, the defendant company would be responsible. If, however, it was only the remote cause of the injury, the defendant company would not be liable. As a general rule, the master or employer is not liable for damages resulting from the negligence of fellow-servants, in the course of their common employment. Coemployees are held in law to assume the risk of the negligence of one another. In assuming the risk incident to the common employment, a fellow-servant assumes the risk of negligence by his coemployees.

While I have felt it my duty to say this much in relation to the law bearing upon the issues raised by the pleadings in this case, I am persuaded that the case must turn in a very great measure upon a question of fact. Both in the testimony and in the arguments to which you have listened, much has been said in regard to the cause of the death of W. N. Boon. On the part of the plaintiff it is contended, that W. N. Boon died from injuries received in the collision; while on the part of the company, it is contended with equal zeal and earnestness that he died from the effects of malarial fever. The main and most important question, then, for your determination is, what caused the death of W. N. Boon? It is a grave and serious question, and much depends upon the answer. In answering this question you must look to the testimony—the whole testimony. You must reconcile it where it is conflicting, and determine its weight, truth, and sufficiency. And in the performance of this duty, you should be actuated by but one motive, governed by but one desire, and have but one object in view, namely, that of arriving at the truth. The chart by which you are to be guided is contained in the oath which you, and each of you, have taken. You shall well and truly try all issues, and a true verdict give according to the evidence. Your verdict when rendered must be the truth, as shown by the facts presented in evidence. Outside influences, plausible inferences, eloquent appeals, personal likes and dislikes, should not enter into your deliberations or shape your conclusion.

If you should conclude from the evidence that the deceased came to his death from injuries received in the collision through the negligence of the defendant, and that this negligence was the proximate cause of the injuries, then your verdict shall be for the plaintiff. If, on the other hand, you should conclude from the evidence that the deceased came to his death from the effects of malarial fever, and not from the effect of any injury received in the collision, then your verdict should be for the defendant, no matter how negligent the defendant may have been on that occasion.

I have been requested to charge you by defendant's counsel as follows:

1. "The burden of proof is on the plaintiff, and before he can recover in this action, he must satisfy the jury by the preponderance of the testimony that the death of W. N. Boon was the result of injuries caused by the negligence of the defendant company." I have already so charged you, and so charge you now.

2. "If the testimony is evenly balanced as to the cause of the death of W. N. Boon, then the verdict must be for the defendant." I have in effect charged you this, because, if the evidence is equally balanced, there can be no preponderance, and you must decide all material issues by the preponderance of the evidence.

3. "If the jury find that W. N. Boon was as likely to have died from any other disease than one arising from his leap, then their verdict should be for the defendant." I cannot charge this request, but will say that, before you can find a verdict for the plaintiff, you must be satisfied by the preponderance of the evidence—that is, the weight of the evidence—that W. N. Boon died from the effect of injuries caused by the negligence of the defendant, and that this negligence was the direct or proximate cause of injury. But if you should be satisfied by the weight of the evidence that W. N. Boon died from other causes not the direct result of injuries received through the negligence of the defendant, your verdict would have to be for the defendant. This request, as I understand, ignores the evidence submitted, tending to show the cause of the death.

The jury found a verdict for the plaintiff of thirty-five hundred and fifty dollars. At the same term, a motion was made for a new trial, which was refused, the judge signing the following order:

This case was heard before me and a jury. The jury returned a verdict in favor of the plaintiff. Thereafter, and during said term, a motion was made by the defendant on the minutes of the court for a new trial. It was earnestly contended that the verdict of the jury was clearly against the weight of the evidence. At the trial, it was contended on the part of the plaintiff, that W. N. Boon died from injuries received in the collision complained of; while, on the part of the defendant company, it was contended that he died from the effects of malarial fever. The main and important issue in the case, therefore, was an issue of fact, to be determined by the jury from the evidence. This issue, I think, was fairly submitted to the jury under proper instructions. On account of the importance of the motion to the defendant company, I have given to it more than ordinary consideration. I have not only read and studied the testimony, but have carefully scrutinized and weighed it, with the view of ascertaining its value, and of determining its truth and sufficiency. The result of this study and examination has led me to the conclusion that the verdict of the jury ought not to be disturbed. It is, therefore, ordered, that the motion for a new trial be, and the same is hereby, refused.

*Messrs. J. Ganahl* and *Nichols & Moore*, for appellant.

*Messrs. Stanyarne Wilson* and *Bomar & Simpson*, contra.

November 16, 1893. The opinion of the court was delivered by

MR. JUSTICE POPE. This action for damages came on to be heard before Judge Izlar and a jury at the October, 1892, term of the Court of Common Pleas for Spartanburg County, when a verdict for the plaintiff was rendered, and a motion for a new trial on the minutes was refused. Judgment being entered, a notice of appeal was given. The following are the grounds of appeal:

1. The judge erred in charging the jury: "If you should

conclude from the evidence that the deceased came to his death from injuries received in the collision through the negligence of the defendant, and that this negligence was the proximate cause of the injuries, then your verdict should be for the plaintiff; if, on the other hand, you should conclude from the evidence that the deceased came to his death from the effects of malarial fever, and not from the effect of any injury received in the collision, then your verdict should be for the defendant, etc."—the error being that the cause of Mr. Boon's death, whether directly from the injury, or from the effects of disease, are in this statement placed on the same equal basis of proof, his honor ignoring and contradicting herein other portions of the charge, in which the law is stated to be, that the preponderance of evidence must be that Mr. Boon died from an injury received in the collision.   This charge, then, in connection with the next grounds, manifestly misled the jury.

2. In refusing to charge, as requested by defendant, "If the jury find that W. N. Boon was as likely to have died from any other disease than one arising from his leap, then their verdict should be for the defendant."

3. In adding to his refusal to charge as above the words: "I cannot charge this request, but will say that before you can find a verdict for the plaintiff, you must be satisfied from the preponderance of the evidence that W. N. Boon died from the effect of injuries caused by the negligence of the defendant, and that this evidence was the direct or proximate cause of the injury.   But if you should be satisfied by the weight of the evidence that W. N. Boon died from other causes not the direct result of injuries received through the negligence of the defendant, your verdict would have to be for the defendant"—the error being, as with the first exception herein, of placing the cause of death, whether from injury received from his leap or whether from other causes on the same ground of proof; his honor defining "preponderance of evidence" to mean "weight of evidence," when speaking of the cause as from the injury, and then stating, if the jury should be satisfied by "the weight of evidence" that Boon died from other causes, then the verdict should be for the defendant.

4. In further adding to his refusal to charge, as requested above, the following words: "This request, as I understand it, ignores the evidence submitted, tending to show the cause of the death," when, it is respectfully submitted, there is nothing in the request which ignores the evidence submitted in general, or of that which showed the cause of death.

5. In refusing to grant a new trial, when there is not a scintilla of evidence that Mr. Boon was injured at all by the leap which he took to avoid collision, and not a particle of evidence that this leap was the proximate cause of his death.

6. In charging, in substance, that the defendant must show of what disease the intestate died.

7. In charging: "While I felt it my duty to say this much in relation to the law bearing upon the issues raised by the pleadings in this case, I am persuaded that the case must turn, in a great measure, upon a question of fact;" intimating that, while he gave the law, they were not to consider it, but simply decide a question of fact.

8. In charging, the main and most important question is: "What caused the death of W. N. Boon?" and saying nothing of their duty to consider the question of contributory negligence.

9. In charging, in substance, in several places, that if plaintiff proved his intestate came to his death from injuries caused by the negligence of the defendant, that he was entitled to recover, ignoring the defence of the defendant that the deceased was guilty of contributory negligence, even if he came to his death by its act, which defendant denies.

W. N. Boon was the engineer of a train owned and operated by the defendant railroad, the Port Royal and Western Carolina Railway Company, on or about the 4th day of October, 1890, and while making a trip from Spartanburg to Augusta, at about 10 and 32 minutes o'clock at night of that date, at a point on the railway near Waterloo, in Laurens County, in this State, while running strictly on the schedule prepared by defendant, met another train coming from Augusta, on its way to Spartanburg, which latter train, according to the testimony of the conductor in this cause, collided with the train under the charge of engineer Boon, because the conductor in charge

of the train from Augusta having fallen asleep, thereby neglected to take a side track, that the train under engineer Boon might pass by in safety.   To avoid the effect of a collision, the engineer Boon, after reversing his engine, leaped from his engine.   At first it was thought he was uninjured, but the next morning he limped, and on carrying his engine to Laurens, he complained to a coemployee "of his heel and his back when he stood up."   He lay over in Spartanburg, and then went to a small place in North Carolina, about 100 miles from Charlotte, to attend to some private business of his own, but was suffering while he was there.   He returned to his work as engineer on defendant's road about 10th or 11th October, 1890, running three nights in succession.   On the 17th October, 1890, while in Augusta, he had what was thought a congestive chill, and had medical advice, but on the next day returned to Spartanburg, when he took his bed, from which he never arose alive, for he died on the 24th of October, 1890.

At the trial, by reason of the issues raised by the pleadings, the plaintiff claimed that Boon came to his death by reason of injuries received while he was forced to jump from his engine to avoid the collision that resulted from defendant's negligence, and the defendant claimed that Boon emerged from that collision "a perfectly sound and able-bodied man," and that his death "was due to a congestive chill, or to malarial dysentery and congestion, or some other similar disease, the result of natural causes, and in no way connected with the aforesaid collision."   Much testimony was given on all these matters, and a sharp contest between medical experts was had as to the cause of Boon's death.   The judge's charge is unusually clear, and, inasmuch as appellants have inserted blocks of it in their grounds of appeal, we desire the charge, in its entirety, reproduced in the report of this case.

We will now examine the questions raised by appellant.   1. In his fifth ground of appeal, he complains that the Circuit Judge denied his motion for a new trial, and the points upon which he relies relate to the testimony, its weight and effect.   We have too often laid down the well recognized rule that the Circuit Judge, in considering the force

and effect of the testimony adduced at the trial, will not be interfered with by this court. It is only on questions of law, wherein the Circuit Judge may have erred, will this court interfere. Let this ground of appeal be dismissed.

2. The first ground of appeal is mainly made up of a quotation from the judge's charge to the jury. Before further consideration of this ground of appeal, we deem it proper to state that this mode of raising an objection to a judge's charge is very objectionable. This court is always pleased to have counsel to assist them by calling attention to the specific errors alleged against the court below; but surely some better method should be adopted by them than embodying a block of the judge's charge in a ground of appeal, and then associate with such quotation counsel's argument to show the judge's error. However, we will proceed to consider it. We have read the judge's charge with special care. When it is construed as a whole, it betokens unusual care on the part of the judge to have the jury apply the law governing this class of cases correctly. Of course, the propositions of law must be stated clearly, and to do this such propositions must be orderly presented. Sometimes an apparent repetition is required to do this. These propositions proceed step by step. Having once or twice made a statement of the law, the Circuit Judge then goes a step further, and need not repeat what he has already made clear. So it was in the case at bar. The judge had already instructed the jury that "to recover damages for an injury done by the defendant company in a case like the present, the plaintiff must prove to your satisfaction by the preponderance of the evidence two things: 1. Negligence on the part of the defendant company. 2. That the injury complained of was the result of such negligence." The Circuit Judge immediately afterwards explains that the negligence must be the proximate cause of the injury, and explains what proximate cause means. He then carefully calls the jury's attention to the effect of contributory negligence by the plaintiff, and shows how it will operate to discharge the defendant company from any negligence on their part. We might go on and pile up the evidence as to the

fidelity of the judge in this charge to the jury in refutation of this criticism, but we will not do so.    We cannot sustain this ground of appeal.

3. The next error may be considered as embodied in the 2d, 3d, and 4th grounds of appeal.    The defendant requested the Circuit Judge to charge: "If the jury find that W. N. Boon was as likely to have died from any other disease than one arising from his leap, then their verdict should be for the defendant."    Although the judge declined to charge in the language prayed for, he met their issue, for he immediately instructed the jury: "I cannot charge this request, but will say, before you can find a verdict for the plaintiff, you must be satisfied from the preponderance of the evidence—that is, the weight of the evidence—that W. N. Boon died from the effect of injuries caused by the negligence of the defendant, and that this negligence was the direct or proximate cause of injury. *But if you should be satisfied from the weight of the evidence that W. N. Boon died from other causes not the direct result of injuries received through the negligence of the defendant, your verdict would have to be for the defendant.* [Italics ours.]    This request, as I understand, ignores the evidence submitted tending to show the cause of death."    The sentence in this extract, immediately preceding the last sentence therein, virtually gives the defendant the benefit of the charge he sought, though not exactly in the form submitted in the request to charge.    This right of selection by the judge must be allowed.    It was not a captious or hypercritical act on his part, but, on the contrary, was intended to keep before the minds of the jury the issues raised by the pleadings and the testimony given in the cause.    Let these exceptions be overruled.

4. The appellant's 6th ground of charge is very general—too much so, under the rules of this court; but in overruling it, we will say we fail to find any evidence in the charge of the Circuit Judge upon which to predicate this attack upon it.

5. In the 7th exception we fail to find any objection to the language complained of.    There is no doubt that the law he had laid down would be remembered by the jury, but all

the judge meant by the language used was that the case, so far as the jury was concerned, would turn upon the view they might be led to adopt after having heard the testimony of a fact in the case—namely, the cause of Boon's death. If appellant had reproduced the language of the judge immediately succeeding that quoted, all difficulty in his mind would have been removed.

6. As to the 8th exception, we must say that the judge was right, for the main question in the case was, "What caused the death of W. N. Boon?" It was distinctly raised in the pleadings as the pivotal question, and it was so treated in the testimony offered. Let this exception be overruled. 7. The 9th exception is not sustained by the case. The judge clearly set forth the defence of contributory negligence.

It is the judgment of this court, that the judgment of the Circuit Court be affirmed.