[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 125 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 126 
September 10, 1926.
Rehearing denied June 30, 1927.
The opinion of the Court was delivered by
The "Case" contains the following statement:
"The cause above named was begun by the service of summons and complaint in July, 1923, but the summons and complaint were never served on defendant Arthur Pulley, and first came on for trial before his Honor, Judge Milledge L. Bonham, and a jury, May 1, 2, and 3, 1924, term of the Court of Common Pleas for Richland County, and resulted in a mistrial. The case next came for trial before his Honor, Judge Wm. H. Townsend, and a jury, on May 22 and 23, 1924, and resulted in a verdict for the plaintiff for the full amount asked for, $50,000. The verdict found by the jury is as follows: `We find for the plaintiff against the Atlantic Coast Line Railroad Company the sum of twenty-five thousand dollars, actual damages; we further find for the plaintiff against he Camp Manufacturing Company the sum of twenty-five thousand dollars actual damages. [Signed] E.J. Zobel, Foreman.' Motions for direction of verdict and for new trial were duly made by the appellants and were overruled by the trial Judge."
Both appellants file exceptions. The Atlantic Coast Line has interposed five separate exceptions peculiar to its appeal and ten general exceptions common to itself and Camp Manufacturing Company. The exceptions raise the question that a directed verdict should have been granted as asked for, upon the verdict that exonerated all of the other defendants against whom the wrongful acts are charged; no allegation or evidence of Clintworth's (the station agent's) negligence constituting the proximate cause, verdict should have been directed for the defendants; error in admission of testimony; that the Court erred in charge of proximate cause; gross and excessive damages; error in *Page 161 
charge as to the right of the railroad company to obstruct the highway crossing in the use of the side track; in not directing a verdict on the ground of gross contributory negligence. The exceptions raise the question that, as the jury did not find Pulley, the engineer of Camp Company, liable, or Johnston, the engineer of the Atlantic Coast Line, liable, the verdict necessarily exonerated the masters or companies for which the parties were working, respectively.
The evidence was sufficient to carry the case to the jury that the Camp Company, with the consent, acquiescence, and approval of the Atlantic Coast Line, had placed and kept its train on the track of the Atlantic Coast Line Railway and across the public highway and crossing of said road, and obstructed the crossing of said highway and crossing, and it was for the jury to say whether unnecessarily and for an unreasonable length of time, and whether it was without headlights, safeguards, or warning to the public of such obstruction.
The evidence shows that Clintworth, the agent of the Atlantic Coast Line Railway Company, by his active direction, allowed it. The Atlantic Coast Line Railway owned the track; Clintworth was its agent and had authority and control. The evidence shows that in the Town of St. Stephens, where the accident happened at the main public crossing, over three parallel tracks of the Atlantic Coast Line, the population and business houses of the town of 500 or 600 people are about equally situated on either side of the railroad, and that this was the main crossing for the entire town. There was evidence for the jury to say whether there were lights or not at the crossing, either on the train which obstructed it or on the depot. The situation was such that both companies owed the duty to the public of whatever would be reasonably adequate to protect this crossing, with the increased danger which they had caused. *Page 162 
There was no light provided by town or either railroad. There was no flagman there. We see no error on the part of his Honor in submitting the case to the jury; the public has a right to be protected where a highway crosses a railroad track.
This Court has decided that, where the servant or employee sued was not the only agency, under the pleadings and evidence, which could have committed the wrong, then acquittal of the servant is not a discharge of the master. Howell v. Southern R. Co., 114 S.C. 31;102 S.E., 856; Spigener v. S.A.L.R. Co., 111 S.C. 414;98 S.E., 330; Beauchamp v. Winnsboro Granite Co., 113 S.C. 527;101 S.E., 856; Donald v. A.C.L.R. Co., 117 S.C. 7;108 S.E., 180. In the Howell case this Court says:
"But the acquittal of Williams will not affect the acquittal of the railroad, unless Williams was the only agency by which the event could have been compassed, and the testimony shows abundantly that he was not."
In the Beauchamp case the Court, speaking through Mr. Justice Hydrick, said:
"But, while the company is liable for the conduct of the engine crew, though they may have acted in violation of their orders and also for the conduct of the defendant Heyward, if he was guilty of wrongdoing resulting in damage to plaintiff, because all of them were its agents or servants, nevertheless the liability of the defendant Heyward depends upon his own conduct, and not upon that of the engine crew, especially if they violated his instructions, because they were not his servants. Evidently the Court fell into the error of regarding Heyward as the master, but he was not. He was only the representative of the master; and a representative of the master is not personally liable for the conduct of other agents or servants of the same master under him, unless he makes himself a participant therein in some way, either by actual participation, by directing their conduct, or otherwise. 7 Labatt's Master and Servant, *Page 163 
§ 2590. Therefore the jury should have been instructed, as requested, that, if they believed Mr. Heyward's testimony, they would not find against him; and, of course, it follows that the Court erred in charging the jury that they could not find against the company without finding against Heyward. This conclusion is in harmony with all of our decisions on the point."
It is the duty of a railroad, at common law (and outside of any statutory requirements), to give such signals, at a public crossing as may be reasonably sufficient, in view of the peculiar situation and surroundings at the time, and as will give the public and individuals warning of the approach and guard them against danger. Callisonv. C. W.C.R. Co., 106 S.C. 131, 132;90 S.E., 260; Chisolm v. S.A.L.R. Co., 121 S.C. 401;114 S.E., 500 (7); McAllister v. C. O.R. Co., 243 U.S. 308;7 S.Ct., 274; 61 L.Ed., 740; Chicago, R.I. P. Ry. Co. v.Sharp, 63 F., 532; 11 C.C.A., 338, 339; 2 Elliott on Roads and Streets (3d Ed.), §§ 1023, 1024, 1025; Clifford v.Southern Ry., 87 S.C. 328; 69 S.E., 513, and cases cited;Kaminitsky v. Railroad Co., 25 S.C. 61.
Ordinary prudence might require a particular crossing to be flagged at certain times, and not others, on account of the circumstances of extraordinary danger, and this is ordinarily a question for the jury. Callison v.C. W.C.R. Co., supra; Matthews v. Railway Co., 67 S.C. 513,514; 46 S.E., 335; 65 L.R.A., 286; 2 Elliott on Roads and Streets (3d Ed.), § 1023; Langley v.Southern Ry., 113 S.C. 56, 57; 101 S.E., 286; Edwardsv. Railroad, 132 N.C. 100, 101; 43 S.E., 585. In the Matthewscase, which was an accident at a traveled place along the track of Charleston Western Carolina and Southern, in Greenwood, the Court, speaking through Mr. Justice Woods, in regard to the liability of both railroad companies, said: *Page 164 
"The charge is, not that the cut which made the danger and into which Partlow fell was improperly constructed and located, but that, owing to the kind of path that led to it over the right of way of the Southern Railway and the Charleston Western Carolina Railway, these defendants, after the cut was made, owed the duty to Partlow, entering it as one of the public, either to properly notify the public not to use the path, or to guard or warn by obstructions or lights. The wrong, if any, was in inviting Partlow into a place of danger known to them, but not to him, without warning or safeguard; and it was of no consequence that the danger was not created by these companies, but by the rightful action of another railroad in making the cut. If under such circumstances he was injured, without fault on his part, they should be held liable. On the other hand, the lessees of the Georgia, Carolina Northern Railway cannot avoid liability on the ground that it had no part in allowing the use of the path, and had never in any way consented to such an approach to its cut. It is alleged the Georgia, Carolina Northern Railway Company knew of the existence and nature of the path when it made the cut, which was dangerous to pedestrians because of its being across the path at right angles. It will hardly be disputed that one who rightfully makes a ditch or cut, dangerous to travelers, across a well-defined way, with knowledge that it has for a long time been used as a public way, and gives no warning and places no safeguard, will be liable to those who, without fault of their own, are injured thereby. If there was any duty to safeguard the cut, it seems clear that it was a duty which devolved upon each of the defendants. From this conclusion it results that the defendants were properly sued jointly. If two or more persons owe to another the same duty, and by their common neglect of that duty he is injured, doubtless the tort is joint, and upon well-settled principles each, any, or all of the tortfeasors may be held. But when each of two or more persons owe to another a separate *Page 165 
duty, which each wrongfully neglects to perform, then, although the duties were diverse and disconnected, and the neglect of each was without concert, if such several neglects concurred and united together in causing injury, the tort is equally joint, and the tortfeasors are subject to a like liability."
And Mr. Justice Marion, in the Chisolm case, which is regarded as a leading case on the duties both of the party crossing and of the railroad, says:
"A railroad company and a traveler on a highway crossing are charged with a mutual duty of keeping a lookout for danger, and the degree of vigilance required of both is in proportion to the known risk; the greater the danger, the greater care required of both."
In Callison v. C. W.C. Ry., supra, our Court, speaking through Mr. Justice Hydrick, says:
"And there can be no doubt that ordinary prudence might require a particular crossing to be flagged at certain times, or at one time, on account of circumstances of extraordinary danger, when that degree of care would not be required at all times. Suppose, for instance, a train should approach a crossing constantly used by a great many people, when the atmosphere is so dense with dust or smoke that its approach could not be seen, and those using the crossing could not tell upon which track it is coming; would not ordinary prudence suggest that a flag be sent ahead? The degree of care should be commensurate with the danger. The question here is not whether this crossing should have been flagged at all, but only on the occasion in question. The evidence is that, under ordinary circumstances, those using it had an open and unobstructed view of it and of the tracks approaching it, and therefore, under normal conditions, flagging may not have been necessary for safety. But, on the occasion in question, the train was going upon a double-tracked crossing, which was frequented by people traveling in automobiles. It was going forward during a rainstorm, which *Page 166 
obscured the vision of the trainmen through the glass of the cab windows, as well as that of the man in the automobile through his windshield, and, possibly, also interfered with each hearing the approach of the other."
In Eargle v. Sumter Lighting Co., 110 S.C. 567;96 S.E., 909, the Court speaking through the same Justice, says:
"The degree of care to be exercised in every case should be commensurate with the danger; the greater the danger, the greater the care required; that a very high degree of danger calls for a very high degree of care."
In the Clifford case, the Court, through Mr. Justice Hydrick, said:
"In Kaminitsky v. Railroad Co., 25 S.C. 61, the Court said: `The common law required the giving of such signals at highways crossings as were reasonable in view of the situation and surroundings "to put individuals using the highway on their guard." Pierce, R.R., 349, and notes. The signals required by the aforesaid statutes did not supersede these reasonable signals, which were before necessary. They did not take away the common-law right of action, by giving in lieu thereof a new cause of action under the statutes, but simply declared what were proper signals, and expressly made them "cumulative."'"
In the Kaminitsky case the Court considered the case as one at common law, with the right to show in evidence the precautions by way of signals which had been required by the statutes.
In Burns v. Railway Co., 61 S.C. 409; 39 S.E., 567, the Court says:
"The right to bring an action at common law was not superseded by the statutory remedy" (as to crossings).
It was properly submitted to the jury whether the appellant Camp Company was operating its train in violation of Code 1922, Vol. 3, § 4898. Mew v. *Page 167 Railway Co., 55 S.C. 101; 32 S.E., 828; Crawford v.Mullins Lumber Co., 110 S.C. 318; 96 S.E., 494.
Both the lessor and lessee, licensor and licensee, are responsible for any damages arising out of the operation of the railroad. Salley Oil Co. v. Southern Ry.Co., 108 S.C. 131; 93 S.E., 336; Phillips v. S.A.L.R.Co., 127 S.C. 541; 122 S.E., 309.
As to the exceptions alleging error on the part of his Honor in his charge on proximate cause: This question of proximate cause is one ordinarily for the jury, and is decided by the Court only when the evidence is susceptible of only one rational inference. There was plenty of evidence in this case for submission to the jury. Mr. Justice Marion says, in State v. DesChamps, 126 S.C. 420,429; 120 S.E., 491, 493, as follows:
"`The proximate cause of an injury is that cause which, in natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury, and without which the result would not have occurred.' 22 R.C.L., 110, § 2. The efficient `intervening cause must be one, not produced by the wrongful act or omission, but independent of it, and adequate to bring injurious results.' Mack v.Railroad, 52 S.C. 336; 29 S.E., 910; 40 L.R.A., 679; 68 Am. St. Rep., 913. Cooper v. Richland County, 76 S.C. 20;56 S.E., 958; 10 L.R.A. (N.S.), 799; 121 Am. St. Rep., 946. Any cause intervening between the first wrongful cause and the final injury, which might reasonably have been foreseen or anticipated by the original wrongdoer, is not such efficient intervening cause as will relieve the original wrong of its character in law as the `proximate cause' of the final injury. Harrison v. Berkely, 1 Strob. 525, 549. Cooper v. Richland County, supra, 22 R.C.L., 134, § 19."
As to the exceptions as not necessary to foresee particular injury, we see nothing as to his Honor's charge defining and explaining proximate cause as complained of, taking *Page 168 
the charge as a whole. In Sandel v. State, 115 S.C. 180;104 S.E., 567, 571 (13 A.L.R., 1268), Mr. Justice Hydrick says:
"But, in application, the rule may need explanation; for instance, it is not necessary to show that a person charged with negligence should have foreseen the particular consequences or injury that resulted. It is enough that he should have foreseen that his negligence would probably result in injury of some kind to some one."
To the same effect is Wilson v. Northern P.R. Co.,30 N.D., 456; 153 N.W., 429 L.R.A., 1915-E, 995. Hubbardv. Bartholomew, 163 Iowa, 58; 144 N.W., 13; 49 L.R.A. (N.S.), 446. Dallas v. Maxwell (Tex Com. App.),248 S.W. 667; 27 A.L.R., 931
We see nothing in the exceptions made that a verdict should have been directed as asked for on the ground that the evidence showed, and no other inference could be drawn therefrom than that the accident resulting in the death of plaintiff's intestate was due to an independent intervening cause. Sandel v. State, 115 S.C. 176; 104 S.E., 567; 13 A.L.R., 1268. Howell v. Union Buffalo Mills, 121 S.C. 137;113 S.E., 577; State v. DesChamps, 126 S.C. 420;120 S.E., 491. In the Howell case Mr. Justice Marion says:
"For proximate and natural consequences, not controlled by the unforeseen agency of a moral being, capable of discretion, and left free to choose, or by some unconnected cause of greater influence, a wrongdoer must generally answer, however small was the probability of their occurrence."
In Sandel v. State, our Court, speaking through Mr. Justice Hydrick, lays down this definition or test:
"The test, therefore, of the sufficiency of intervening causes to defeat recovery, is not to be found in the mere fact of their existence or number, but rather in their nature, and the manner in which they affect the continuity of the *Page 169 
operation of the primary cause, or the connection between it and the injury. If they so affect it that the injury cannot fairly be said to be the natural and probable consequence of the primary cause, they become the proximate or efficient, and the primary becomes the remote, cause. The law does not go back to the last efficient cause. Cannon v.Lockhart Mills, 101 S.C. 59; 85 S.E., 233. Carter v.Railroad Co., 109 S.C. 119; 95 S.E., 357
[11 A.L.R. 1411]. Milwaukee, etc., R. Co. v. Kellogg, 94 U.S. 469;24 L.Ed., 256; 22 R.C.L., 132, 134."
There was evidence that the Camp Company blocked the main business crossing, without any lights or protection for the public, for an unreasonable length of time, creating a dangerous and deceptive condition, and let this condition remain without protection, probably because of insufficient help, and it so remained for an unreasonable length of time. If that was so, it was for the jury to determine that in the natural, ordinary sequence this condition was at least one of the direct contributing causes to the disaster. The respondent claimed that it was; the appellant contended that it was not; hence the jury had to determine that question.
As to the obstruction of the highway and railroad crossing, the complaint charged both of the defendants with responsibility for obstructing the highway; the evidence shows that the obstruction of the crossing was made by the direct authority of the representative of the Atlantic Coast Line Railway on the spot. A railroad owes a duty to the public of not obstructing a highway, which crosses it, unnecessarily or unreasonably. Code 1922, Vol. 3, § 4983. Murray v. S.C.R. Co., 10 Rich. (44 S.C.L.), 232; 70 Am. Dec., 219. Gaston v. Rock Hill, 107 S.C. 130;92 S.E., 191. Phillips v. S.A.L. Co., 127 S.C. 542;112 S.E., 309. The jury found that both companies were obstructing the crossing, and that that was the direct cause of the injury; the verdict said both were equally responsible. *Page 170 Matthews v. Railway Co., 67 S.C. 514;46 S.E., 335; 65 L.R.A., 286. Brown v. Southern R. Co., 111 S.C. 152;96 S.E., 701. Rhame v. Cty of Sumter, 113 S.C. 153;101 S.E., 832.
Both the contention that the blocking was unnecessary and was for an unreasonable length of time, as claimed by the plaintiff, was properly submitted to the jury. There was ample evidence to carry the case to the jury of negligence and willfulness; there was some evidence of failure to give statutory signals, and this would have warranted its submission to the jury under the Statute. Code 1922, Vol. 3, §§ 4903, 4925. Wideman v. Hines,117 S.C. 519; 109 S.E., 123. Bain v. N.W.R. Co., 120 S.C. 373;113 S.E., 277.
The Court could not direct a verdict upon the ground of contributory negligence. It can only direct a verdict when the facts are undisputed, or reasonable men cannot differ as to the inference to be drawn from the testimony.
"The Court can only direct a verdict when the facts are undisputed, or reasonable men cannot differ as to the inferences to be drawn from the testimony." Richardson v.N.W.R. Co., 124 S.C. 326; 117 S.E., 510. Wideman v.Hines, 117 S.C. 516; 109 S.E., 123. Thompson v. A.C.L.R. Co., 113 S.C. 268; 102 S.E., 11. Turbyfill v. RailwayCo., 86 S.C. 379; 68 S.E., 687. Crawford v. Charleston-Isleof Palms Traction Co., 126 S.C. 450;120 S.E., 381 (2, 3). Strickland v. Southern R. Co., 107 S.C. 523;93 S.E., 187.
In the Richardson case above, the rule is well stated by the Chief Justice:
"The rule when facts should be submitted to the jury is thus clearly stated in A. E. Enc. of Law, 465 et seq., and quoted with approval in Rinake v. Victor ManufacturingCo., 55 S.E., 179; 32 S.E., 983. And Wood v. ManufacturingCo., 66 S.C. 482; 45 S.E., 81: "The general rule *Page 171 
is well known that questions of fact are to be submitted to the jury, and this includes not only cases when the facts are in dispute, but also when the question is as to inference to be drawn from such facts after they have been determined. It will readily be observed that few cases will arise in which there is no question as to the facts involved; the element of ordinary care must from its very character always require the decision of a jury, except where there is a violation of the statutory duty or when the facts are undisputed, and but one inference can be reasonably drawn from them. And the same is equally true as to the determination of the question of proximate cause, so that the following rules may be stated as applicable to every case: The issues of negligence should go to a jury: (1) When the facts, which if true, would constitute evidence of negligence, are controverted. (2) When such facts are not disputed, but there may be a fair difference of opinion as to whether the inference of negligence should be drawn. (3) When the facts are in dispute and the inferences to be drawn therefrom are doubtful.'"
In every case in this State of an injury at a crossing (not necessarily under the crossing statute), where there were obstructions to the view, or where there were obstructions or difficulties in keeping the best lookout, or other things to divert or distract the mind, the Court has held the question of gross negligence and of contributory negligence were questions for the jury. Matthews v. Railway Co., 67 S.C. 514;46 S.E., 335; 65 L.R.A., 286. Chisolm v. S.A.L.R. Co., 121 S.C. 404, 405; 114 S.E., 500 (13-15).Curlee v. Sou. Ry. Co., 122 S.E., 363; 115 S.E., 628.Wideman v. Hines, 117 S.C. 519, 520; 109 S.E., 123
(1-6). Bain v. N.W.R. Co., 120 S.C. 373, 374;113 S.E., 277 (1 and 2). Prescott v. Hines, 114 S.C. 262;103 S.E., 543. Callison v. C. W.C.R. Co., 106 S.C. 129;90 S.E., 260. Peeples v. S.A.L. Ry., 115 S.C. 119;104 S.E., 541. Osteen v. Railway, 76 S.C. 378, 379;57 S.E., 196. White v. A.C.L.R. Co., 106 S.C. 339; *Page 172 91 S.E., 323. Wheelis v. So. Ry. Co., 118 S.C. 308;110 S.E., 154. Byrd v. A.C.L.R. Co., 2 F.2d 674, from our C.C.A. opinion by Circuit Judge Woods, citing and approving opinion of Mr. Justice Marion in Chisolm v. S.A.L.R. Co., supra.
The violation of the statute as to giving of signals at a public crossing "is negligence per se; moreover, it is sufficient to warrant a reasonable inference of recklessness, willfulness, or wantonness, and therefore sufficient to carry that issue to the jury. No doubt, in some instances, it may be the result of mere inadvertence; if so, it will be negligence only." Callison v. C. W.C.R. Co.,supra. Keel v. S.A.L.R. Co., 108 S.C. 393;95 S.E., 64 (3).
If evidence is susceptible of the inference that the negligence of the defendant was a proximate cause of the injury, then the issue is for the jury. Crawfordv. Charleston-Isle of Palms Traction Co., 126 S.C. 450;120 S.E., 381 (2, 3). If there is evidence which would warrant a reasonable finding that defendant was guilty of recklessness (or of negligence), "we must conclude that the jury so found, if that conclusion be necessary to support a general verdict for plaintiff." Callison v. C. W.C.R.Co., 106 S.C. 129; 90 S.E., 260.
In Norris v. Greenville, S. A.R. Co., 111 S.C. 329,330; 97 S.E., 848, 850, the Chief Justice states the rule of recklessness or wantonness thus:
"First, second, and third exceptions: These exceptions cannot be sustained, for the reason that not only is the conscious invasion of the rights of another in a wanton, willful, and reckless manner an act of wrong, but also when the wrongdoer does not actually realize that he is invading the right of another, provided the act is committed in such a manner that a person of ordinary reason and prudence would say that it was a reckless disregard of another's rights." *Page 173 
See, also, Osteen v. Southern R. Co., 76 S.E., 378;57 S.E., 196.
There was evidence both from the plaintiff's and defendants' witnesses that the blocking of this crossing was habitual. Such evidence was sufficient at common law to warrant the submission to the jury of the question of willfulness. Lorenzo v. Railroad Co., 101 S.C. 412;85 S.E., 964. Kirkland v. Ry. Elect. Corp., 97 S.C. 67;81 S.E., 306. Brown v. Southern Ry. Co., 111 S.C. 150;96 S.E., 701.
"The violation of a statute is negligence per se, but not willfulness or recklessness or wantonness per se. It is evidence of willfulness, wantonness, and recklessness, but it is for the jury to say." Keel v. S.A.L.R. Co., 108 S.C. 393;95 S.E., 64. Dyson v. Sou. Ry., 83 S.C. 357;65 S.E., 344. Lindler v. Southern Ry. Co., 84 S.C. 536;66 S.E., 995.
It is not necessary to expressly refer to the various statutes which were violated, as this Court has said: "The Court, however, held that the express reference to the statute was not necessary, saying: `We see no reason requiring the pleader to expressly refer to the statute. We must make a case bringing the defendant within the liability created by the statute. When this is done, the defendant cannot be misled.'" Smith v. Gilreath, 69 S.C. 356;48 S.E., 262.
An action for wrongs under the statute may be combined with one for wrongs outside of the statute.Smith v. Gilreath, supra. Edgefield County v. Ga.Car.P. Co., 104 S.C. 324; 88 S.E., 801.
But in this case we have evidence tending to show violation of three different statutes, to wit: (a) Signals at crossings; (b) failure to have brakeman or flagman on rear of train; and (c) blocking of a crossing of a public highway. The negligence of the driver cannot be imputed to the guest. Langley v. Southern R. Co., 113 S.C. 53; *Page 174 101 S.E., 286. Clark v. Columbia Ry. G. E.Co., 117 S.C. 13; 108 S.E., 178. Little v. Hackett,116 U.S. 375; 6 S.Ct., 391; 29 L.Ed., 652.
As to the exception as to the evidence of Pinckney offered in reply and to contradict the witness Huggins, we say, as was said in Smoak v. Martin, 108 S.C. 474;94 S.E., 869:
"We shall not reverse a judgment because some questionable testimony was allowed, if questionable it was, when there is a large sufficiency of competent testimony to support the verdict."
As to exception 9, value of life and measure of damages, no request was made to the Court for special instruction by either of the appellants, and we see no error in his Honor's charge. Trimmier v. Railway Co., 81 S.C. 213;62 S.E., 209. Turbyfill v. Railway Co., 86 S.C. 395;68 S.E., 687.
As to exception 10, excessive damages, we cannot say that the verdict was sufficiently gross and excessive as to shock the conscience of the Court so that it should be set aside. The judge heard the case, was familiar with it, and let the verdict stand as the jury rendered it, for actual damages, and we will not review the findings of his Honor. Brickman v. Sou. Ry., 74 S.C. 314;54 S.E., 553. Steele v. A.C.L.R. Co., 103 S.E., 117;87 S.E., 639. Huggins v. Railroad Co., 96 S.C. 278; 79 S.E., 406, and other authorities too numerous to mention.
As to exception 5, added by leave of Court by Atlantic Coast Line Railroad Company, the cause was submitted to the jury, both as to common-law duty and negligence of the defendant at a public crossing, outside of any question of whether or not the statutory signals were given, and his Honor in his charge gave a reasonable interpretation of the statute under Peeples v. S.A.L.R. Co., 115 S.C. 119;104 S.E., 541. Lawson v. Railroad Co., 91 S.C. 225;74 S.E., 473. Sanders v. Railroad Co., 97 S.C. 429;81 S.E., 786. Reynolds Tobacco Co. v. A.C.L.R. Co., 131 S.C. 208; *Page 175 126 S.E., 449. Manning v. A.C.L.R. Co., 129 S.C. 391;125 S.E., 31.
We see no reason to overrule these authorities. We see no reason to sustain any of the exceptions. All exceptions are overruled, and judgment affirmed.
MESSRS. JUSTICES BLEASE and STABLER and MR. ACTING ASSOCIATE JUSTICE RAMAGE concur.